### SCRIVNER v. FEDERAL CREDIT BUREAU, Inc. (No. 1769.)

Court of Civil Appeals of Texas. Beaumont. Dec. 13, 1928.

L. A. Adamson, of Houston, for appellant.

Boyles, Brown & Scott, of Houston, for appellee.

WALKER, J. This suit was instituted in county court by appellee against appellant upon a series of eight notes, Nos. 2 to 9, inclusive, each for $25, dated May 26, 1926; No. 2 due 60 days after date, and the others maturing serially every 30 days, with interest at 8 per cent. from date and 15 per cent. attorneys' fees. Appellant answered that these notes were a part of a series of notes, amounting to about $655.87, given by him to the Fess System Company of Texas as the purchase price for a refrigerator, bought by him from the Houston Refrigerator Company, a partnership; that the refrigerator was wholly worthless and the sale was induced by fraud. He prayed for cancellation of the notes on the ground of failure of consideration. Appellee replied, by supplemental petition, that it purchased the notes from the Credit Alliance Corporation, a New York Corporation, who in turn had purchased them from the Fess System Company in good faith for a valuable consideration and before maturity. The pleadings and evidence disclosed that the refrigerator was sold to appellant by the Houston Refrigerator Company, a partnership; that the notes were made payable to the Fess System Company; that it assigned the notes in question to the Credit Alliance Corporation, who, in turn, assigned the notes to appellee. In answer to special issues, the jury found that the Fess System Company obtained the notes from appellant by fraud, and that appellee, at the

time it purchased the notes in question from the Credit Alliance Corporation, had actual knowledge of the fraud of the Fess System Company. The jury further found that, at the time the Credit Alliance Corporation purchased the notes in question, it did not have actual knowledge of the fraud of the Fess System Company, and, in answer to another question, that it did not have "knowledge of such facts that its actions in taking the notes in question amounted to bad faith." Appellee concedes: "The evidence established the fact that appellant was induced to sign and execute the notes in question by fraud." "Appellee was not a purchaser in due course and did not claim to be such." But appellee insists that the Credit Alliance Corporation, under the verdict of the jury, was a holder in due course, having acquired the notes in good faith before maturity and for a valuable consideration, and therefore, holding under the Credit Alliance Corporation, it was protected in its title to the notes. Appellant insists that the verdict of the jury, finding that the Credit Alliance Corporation was a holder in due course of trade, was without support and so against the great weight and preponderance of the evidence as to be wrong.

On the entire record the verdict has support. The Credit Alliance Corporation was domiciled in New York with a capital stock and surplus in excess of $5,000,000.00. Its chief executive officer, Fannie H. Marcus, testified:

"I, as agent for the Credit Alliance Corporation, handled the purchase of the O. L. Scrivner notes from the Fess System Company of Texas. * * *

"I, as an officer or agent of the Credit Alliance Corporation, knew at the time the Credit Alliance Corporation purchased the O. L. Scrivner notes, that the consideration for the said O. L. Scrivner notes was a refrigerator sold to Mr. Scrivner. Seventeen promissory notes and a lien instrument as security therefor were transferred to Credit Alliance Corporation by the Fess Company of Texas with said O. L. Scrivner notes at the time it purchased the said notes. I did not know at the time the Credit Alliance Corporation purchased the O. L. Scrivner notes, that the Fess System Company of Texas or any other company or individual had guaranteed the refrigerator sold to O. L. Scrivner to perform satisfactorily to Mr. Scrivner or to perform in any manner whatever, or whether there was any guarantee at all made to Mr. Scrivner by any person. I did not know at the time the Credit Alliance Corporation purchased the notes from O. L. Scrivner that the refrigerator sold to O. L. Scrivner was defective or that it did not do the work it was guaranteed to do. I did not know at the time Credit Alliance Corporation purchased the O. L. Scrivner notes that the refrigerator sold to O. L. Scrivner was defective in any manner whatsoever.

"The Credit Alliance Corporation is engaged in the business of purchasing promissory notes, trade acceptances, bills of exchange and other negotiable paper. Credit Alliance Corporation had not an agent in Texas.

"The O. L. Scrivner notes were offered for sale to the Credit Alliance Corporation at its office in New York City by the Fess System Company of Texas and the Credit Alliance Corporation paid for said notes the sum of $577.17, giving its check in the amount of $511.18 therefor and a duebill in the amount of $65.59. Credit Alliance Corporation did not have an agent come to Houston to purchase the said O. L. Scrivner notes."

This testimony was sufficient to raise the issues submitted to the jury and to support their verdict. Appellant requested the submission of the 4 following issues:

"Special Issue No. 1. Was the Federal Credit Bureau, Inc., plaintiff herein, a purchaser of the notes in question for a valuable consideration before maturity and without notice of the defenses claimed and alleged by the defendant?

"Answer 'yes' or 'no,' as you find the fact to be.

"Special Issue No. 2. Was the plaintiff herein, the Federal Credit Bureau, Inc., a purchaser of the notes in question for value and without notice of the fraud charged by defendant?

"Answer 'yes' or 'no,' as you find the fact to be.

"Special Issue No. 3. Was the Credit Alliance Corporation, the assignor of said notes, a purchaser of the notes in question for a valuable consideration before maturity and without notice of the fraud?

"Answer 'yes' or 'no,' as you find the fact to be.

"Special Issue No. 4. Was the Credit Alliance Corporation a purchaser of the notes in question for value before maturity and without notice that the consideration for which said notes had been given had failed?

"Answer 'yes' or 'no,' as you find the fact to be."

These issues were all multifarious, and therefore the court correctly refused to submit them to the jury. Interstate Casualty Co. v. Hogan (Tex. Civ. App.) 232 S. W. 354. Appellant also requested the submission of 7 special charges in connection with the special issues sent to the jury. Without quoting these charges, it is sufficient to say, in justifying the court's refusal to submit them, that they were general charges on the law of negotiable instruments, without application to the specific issues submitted to the jury. West Lumber Co. v. Keen (Tex. Com. App.) 237 S. W. 236.

There being no reversible errors in the record, the judgment of the trial court is in all things affirmed.